IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

ALEJANDRO MACHUCA                                                    PLAINTIFF

v.                                                         No. 3:14CV112-MPM-JMV

DR. JEFFREY BEARDS, ET AL.                                          DEFENDANTS

## MEMORANDUM OPINION

This matter comes before the court on the *pro se* prisoner complaint of Alejandro Machuca,
who challenges the conditions of his confinement under 42 U.S.C. § 1983.  For the purposes of the
Prison Litigation Reform Act, the court notes that the plaintiff was incarcerated when he filed this suit.
For the reasons set forth below, Machuca's claims against Correctional Sergeant Stone and
Correctional Officer Leflore for use of excessive force and failure to protect will proceed.  However,
Machuca's allegations against the remaining defendants will be dismissed for failure to state a claim
upon which relief could be granted.

## Factual Allegations

On December 27, 2011, a race riot between Black and Hispanic inmates erupted in Machuca's
housing unit at the Tallahatchie County Correctional Facility in Tutwiler, Mississippi.  Machuca is a
Hispanic inmate.  Once the riot was quelled, each inmate was placed in plastic restraints and escorted
back to his cell.  Black staff members cuffed Machuca and made his restraints far too tight, cutting off
circulation to his hands.  The guards escorting Machuca were Correctional Sergeant Stone and
Correctional Officer Leflore.  Each taunted the plaintiff because he is Hispanic, but he said only,
"OK."  As Machuca entered his cell, the Stone and Leflore noticed that his cuffs were too tight.  Once
he was in his cell, the guards told him to put his hands through the food tray so they could cut off his
restraints.  Once Machuca's hands were through the tray hole, Stone used an unauthorized blade in

attempting to remove the cuffs, and the weapon made a deep cut in Machuca's right wrist.  Machuca

called the weapon a "suicide knife."  Machuca yelled for Stone to stop, but she ignored him and kept

cutting to remove the cuffs.  Machuca screamed, and Stone relented.  Stone told Machuca not to tell

anyone about the incident.  Black Correctional officers, Special Operations Response ("SORT") Team

members, and correctional supervisory staff all witnessed the incident, but none intervened.  Machuca

was taken outside for 30 to 50 minutes wearing only boxer shorts and sneakers, though the

temperature outside was 28° F.  Machuca became weak and tired and was finally taken to medical.

On the way there, Stone and Leflore told him, "You better say this was an accident."  A correctional

nurse then cut off the over-tightened flex cuffs.  D. Strong, who worked as a nurse at the Tallahatchie

County Correctional Facility, examined Machuca and arranged for his treatment at a local hospital.

Machuca was transported to the hospital a few hours later, where he was examined and treated.  His

wound was stapled together and he was sent back to the facility, but the wound kept bleeding.  The

doctor at the Tallahatchie County Correctional Facility told Machuca that she needed to remove the

staples and close the wound with sutures.  She told the correctional staff to get Machuca some clothes

because he was still in his boxers and sneakers and was shaking too hard for the doctor to suture the

wound.  Machuca then put clothes on, warmed up, and received the sutures.  He left with prescriptions

for pain pills and antibiotics.

The rest of Machuca's complaint involves his pursuit of relief through California's prison

grievance procedure.  He informed Grievance Coordinator Patricia Smith and Associate Warden

Wardlow about the incident.  Smith and Case Manager Coleman conducted a videotaped interview,

during which Coleman called Machuca a snitch.  Correctional Security Chief Werner and Patricia

Smith also interviewed Machuca at the behest of J.W. Moss (California Department of Corrections

and Rehabilitation ("CDCR") Chief Deputy Warden for Contract Beds Unit) and Matthew Cate (who

oversees the official records of the California Department of Corrections and Rehabilitation).

Machuca submitted a staff complaint against defendants Stone and Leflore for use of an unauthorized

weapon due to racial animus. Defendant Jerry Wardlow initially granted relief, but defendant R.

Floweree ordered that the grievance form be amended to deny relief. Wardlow then revised the

grievance form, stating that the staff members did not violate prison policy. J.W. Moss then partially

granted relief, finding that, though Machuca was injured, the staff did not violate policy to cause the

injury. At some point in the grievance process, the institution conceded that Stone had not used the

correct tool to remove the flex cuffs, but that she harbored no intent to injure Machuca and was only to

remove the flex cuffs. Machuca's grievance was denied on the third step of the CDCR grievance

process. Machuca has sued Dr. Jeffrey Beard because he "has overall Custodial Jurisdiction" of

California inmates.

### Respondeat Superior

Section 1983 liability cannot be predicated upon a *respondeat superior* theory. *Monell v.*

*Department of Social Services*, 436 U.S. 658, 691 (1978). For a plaintiff to state a viable cause of

action pursuant to § 1983, he must "identify defendants who are either personally involved in the

constitutional violation or whose acts are causally connected to the constitutional violation alleged."

*Woods v. Edwards*, 51 F.3d 577, 583 (5th Cir. 1995) (citing *Lozano v. Smith*, 718 F.2d 756, 768 (5th

Cir. 1983)). In this case, the plaintiff does not allege that Matthew Cate, J.W. Moss, R. Floweree, J.

Lozano, Patricia Smith, Jerry Wardlow, or Chief Werner had any personal involvement or were

causally connected to the incident in any way. These defendants simply took part in administering the

grievance process. In addition, Associate Warden Figueroa and Dr. Jeffrey Beards were only

supervisors; neither had any personal involvement in the incident during which Machuca was cut. As

none of these defendants had any personal involvement with the incident, they must be dismissed from this case.

## Denial of Medical Treatment

Machuca's claim against Nurse D. Strong must also fail. In order to prevail on an Eighth Amendment claim for denial of medical care, a plaintiff must allege facts which demonstrate "deliberate indifference to the serious medical needs of prisoners [which] constitutes 'unnecessary and wanton infliction of pain' proscribed by the Eighth Amendment . . . whether the indifference is manifested by prison doctors or prison guards in intentionally denying or delaying access to medical care . . . ." *Estelle v. Gamble*, 429 U.S. 97, 104-105, 50 L. Ed. 2d 251, 260 (1976); *Mayweather v. Foti*, 958 F.2d 91, 91 (5th Cir. 1992). The test for establishing deliberate indifference is one of "subjective recklessness as used in the criminal law." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Under this standard, a state actor may not be held liable under 42 U.S.C. § 1983 unless plaintiff alleges facts which, if true, would establish that the official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 838. Only in exceptional circumstances may a court infer knowledge of substantial risk of serious harm by its obviousness. *Id.* Negligent conduct by prison officials does not rise to the level of a constitutional violation. *Daniels v. Williams*, 474 U.S. 327, 106 S.Ct. 662 (1986), *Davidson v. Cannon*, 474 U.S. 344, 106 S.Ct. 668 (1986). In cases such as this, arising from delayed medical attention rather than a clear denial of medical attention, a plaintiff must demonstrate that he suffered substantial harm resulting from the delay in order to state a claim for a civil rights violation. *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993); *Campbell v. McMillin*, 83 F. Supp. 2d 761 (S. D. Miss. 2000). A prisoner's mere disagreement with medical treatment provided by prison officials does not state a

claim against the prison for violation of the Eighth Amendment by deliberate indifference to his serious medical needs. *Gibbs v. Grimmette*, 254 F.3d 545 (5th Cir.2001), *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997).

Under the deliberate indifference standard, Machuca's claims against Nurse D. Strong must also be dismissed. Machuca claims only that Nurse Strong examined him, then had him transported a few hours later to a local hospital, where he was treated and released. Though the treatment at the local hospital was ineffective, Nurse Strong was not involved in that treatment. Machuca's treatment by the corrections doctor was effective, and he has recovered. His allegations against Nurse Strong will be dismissed for failure to state a claim upon which relief could be granted.

### Case to Proceed Against Two Defendants

Machuca's allegations against Correctional Sergeant Stone and Correctional Officer Leflore, however, state claims for use of excessive force and failure to protect. The case will therefore proceed against these two defendants.

**SO ORDERED**, this, the 19th day of June, 2014.

**/s/ MICHAEL P. MILLS**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**